# IN THE COURT OF APPEALS OF IOWA

No. 22-0404
Filed September 21, 2022

**IN THE INTEREST OF S.G.**
**Minor Child,**

**A.K., Mother,**
    Petitioner-Appellee,

**M.G., Father,**
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Monona County, Mark Cord III, District Associate Judge.

A father appeals the termination of his parental rights under Iowa Code section 600A.8 (2021). **AFFIRMED.**

Jessica R. Noll of Deck Law P.L.C., Sioux City, for appellant.

Sabrina Sayler of Crary, Huff, Ringgenberg, Hartnett & Storm, P.C., Dakota Dunes, South Dakota, for appellee.

Michele Lewon, Sioux City, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Tabor and Chicchelly, JJ.

**CHICCHELLY, Judge.**

A father appeals the termination of his parental rights to his six-year-old child under Iowa Code section 600A.8 (2021). He challenges the sufficiency of the evidence showing the grounds for termination. He also contends termination is not in the child's best interests. Following our de novo review, *see In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020), we affirm.

The child's mother and father divorced in 2018. They agreed they would share joint legal custody and the mother would have physical care of the child. They also agreed that the father would have weekly visitation from Thursday to Sunday and pay $428 per month in child support. The district court approved their agreement and incorporated the provisions into the decree dissolving their marriage.

After the divorce, the father failed to exercise all his visitation. The mother described his behavior as "hostile," "paranoid," and "very aggressive." He also talked about suicide and voluntarily terminating his parental rights. Based on his drug use before the marriage, the mother suspected that the father was using methamphetamine. Just three months after the court entered the dissolution decree, the mother moved to modify child custody. She asked the court to require that the father take a drug test before each visit and for all visits to be supervised until the father showed he no longer used drugs.

After the mother began modification proceedings, the father showed threatening behavior toward her. Within one month, the mother petitioned for relief from domestic abuse. The district court issued a protective order prohibiting the father from contacting the mother, but his behavior escalated. Just days after the

final protective order issued, the father violated it by calling and texting the mother at least seventy-nine times over two days before breaking into her home and attacking her with a baseball bat and knife. His actions led to a jury finding him guilty of five crimes, including first-degree burglary. The district court sentenced the father to a thirty-year prison sentence with a five-year mandatory minimum sentence. The Iowa Department of Corrections lists a tentative discharge date in 2032.

Twenty months into the father's prison sentence, the mother petitioned to terminate his parental rights under Iowa Code section 600A.8. The mother had remarried and stated that her husband wants to adopt the child. Following a hearing, the district court found the mother proved the grounds for terminating the father's parental rights under section 600A.8(3), (8), and (9). It also found termination is in the child's best interest and granted the mother's petition.

We begin with the father's claim of insufficient evidence supporting the grounds for termination. He challenges all three grounds found by the district court. We may affirm if the record supports termination on any one of these grounds. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012).

Iowa Code section 600A.8(3) allows the court to terminate parental rights if a parent has abandoned a child. "To abandon a minor child" means to "reject[] the duties imposed by the parent-child relationship, . . . which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child." Iowa Code § 600A.2(20). The statute considers a parent to have abandoned a child six

months of age or older "unless the parent maintains substantial and continuous or repeated contact with the child." *Id.* § 600A.8(3)(b).

The father challenges the finding that he abandoned the child. To prevent a finding of abandonment, a parent must provide "contribution toward support of the child of a reasonable amount, according to the parent's means." *Id.* § 600A.8(3)(b). The parent must also show "substantial and continuous or repeated contact" by at least one of the following:

> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
> (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

*Id.*

The father contends the mother failed to show he abandoned the child because she prevented his attempts at regular communication. He cites the protective order, which limited him to six hours of supervised weekly visitation with the child and otherwise prohibited him from contacting the mother or child. Less than one week after the court entered the final protective order, it ordered the father to have no contact with the mother for five years due to his criminal actions. Although the criminal no-contact order does not prevent the father from contacting the child, he notes that the mother attempted to modify it to restrict his contact with

the child.[1]  The father argues that he "has clearly attempted to maintain a relationship with [the child] while following court orders," while the mother has "intentionally taken steps to end [his] relationship with [the child]."

The father's argument ignores that the no-contact orders result from his own choices and actions.  The father began using methamphetamine before the divorce.  His methamphetamine use caused erratic behavior, including the inconsistent exercise of his visitation with the child, and led the mother to seek the custody modification.  The father responded by threatening the mother.  Fearing for her safety, she obtained a protective order.  But the protective order did not deter the father; he broke into the mother's home, assaulted the mother, and tried to abscond with the child.  The father also threatened to kill himself and implied he would also kill the child, doing so in the presence of the child and the child's older half-sibling.  The criminal charges and resulting convictions led to a thirty-year prison sentence and criminal no-contact order.  As the guardian ad litem noted in a report to the court, the father

> does not accept any responsibility for assaulting [the mother] or traumatizing [her children] when he broke into their house.  He accepts responsibility that breaking into the house was a bad decision, but continues to place blame on [the mother] not allowing him to see [the child].  He has not come to terms with the reality of the situation at all and I believe he sees himself as a victim in this situation.

The father's incarceration cannot justify his lack of relationship with the child.  *See B.H.A.*, 938 N.W.2d at 234.  Although the no-contact order prevented

---

[1] The mother asked that the order be modified to prevent the father from contacting persons residing with her and her immediate family, but she dismissed the action one month later.

the father from contacting the mother, he made no effort to communicate with the child since his arrest. *See In re A.K.*, No. 10-0164, 2010 WL 2598252, at *1-2 (Iowa Ct. App. June 30, 2010) (affirming termination for abandonment under section 600A.8(3)(b) because the father's separation from the child "was of his own making" by abusing the mother, violating a protective order, and failing to seek the court's permission to provide monetary support or have written or supervised contact with the child). As the district court found, the father "is a near-stranger to [the child] as a result of his own actions." Clear and convincing evidence shows the father abandoned the child as required to terminate his parental rights under section 600A.8(3)(b).

We next turn to the question of the child's best interests. *See* Iowa Code § 600A.1(1) ("The best interest of the child subject to the proceedings of this chapter shall be the paramount consideration in interpreting this chapter."). "The best interest of a child requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent." *Id.* § 600A.1(2). When determining whether a parent has affirmatively assumed this duty, the court must consider a parent's "fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life." *Id.*

The father claims termination is not in the child's best interests. He argues that he attempted to have a meaningful relationship with the child despite the court orders preventing him from contacting the mother. He notes he paid most of the

child support he owes. The father also claims that he is working to better himself while incarcerated.

Substantial evidence supports the finding that termination is in the child's best interests. The child, now six years old, has not seen or had contact with the father since his arrest, over three years ago. There is little, if any, relationship between them. In recent years, the child only referenced the father "a couple times," referring to him as "my first dad who cries all the time." The father is currently not set for release from prison until 2032, at which time the child will be seventeen years old.

The record shows that the father was not fully embodying his role as a parent even before his incarceration. In the months between the divorce and his arrest, the father never exercised full visitation with the child under the decree. The mother testified that the father "did have a good solid couple of months where he did the dad stuff and was there and present" during the child's life. But after that period, the mother describes "this gradual decrescendo, this break down of it got less and less and he wasn't in the home as much and then he was gone and then when he was home, he was asleep and then he left immediately after. It was just a—a break down."

The mother's husband assumed the role of father to the child in recent years. The guardian ad litem states that he loves the child "deeply and is willing to accept all of the duties as father." Terminating the father's parental rights will allow the mother's husband to adopt the child and formalize their relationship. Because doing so is in the child's best interests, we affirm.

**AFFIRMED.**